UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

MICHAEL ELBERY,                )
        Plaintiff              )
                               )
               v.              )   C.A. NO. 09-cv-30076-MAP
                               )
BECKET WOODS ROAD              )
AND MAINTENANCE                )
DISTRICT, ET AL.,              )
        Defendants             )

MEMORANDUM AND ORDER REGARDING
DEFENDANTS' MOTION TO DISMISS
(Dkt. No. 27)

July 29, 2010

PONSOR, D.J.

## I. INTRODUCTION

Plaintiff Michael Elbery, ("Plaintiff"), has brought this pro se civil rights action against Becket Woods Road and Maintenance District, a municipal corporation, and several current and former members of its governing body, alleging, inter alia, that Defendants violated his rights under the First and Fourteenth Amendments to the United States Constitution.  The complaint, as amended, also asserts claims under the federal Racketeer Influenced and Corrupt Organizations (RICO) statute, 18 U.S.C. §§ 1962, 1964, various state statutory provisions, and the common law.  The gravamen of Plaintiff's allegations is that Defendants mismanaged District assets and manipulated

District elections to Plaintiff's detriment over a number of
years.  Plaintiff is seeking compensatory and exemplary
damages totaling $400,000 as well as declaratory relief.

Defendants have moved to dismiss the complaint,
contending that: (1) Plaintiff lacks standing to assert
Counts I-IX and (2) Count X is stated against an entity that
is not a named party to this action. (Dkt. No. 27.)[1]  For
the reasons stated below, Defendants' Motion to Dismiss will
be allowed.

## II. FACTUAL BACKGROUND.[2]

Defendant, Becket Woods and Maintenance District
(hereinafter "Becket Woods" or "the District") is an

---

[1] Those Defendants who have already answered the complaint,
seek to join the motion to dismiss "as if it were a Motion
for Judgment on the Pleadings."  (Dkt. No. 27, Defs.' Mot.
to Dismiss, 1, n.1.)  Because motions for judgment on the
pleadings under Federal Rule of Civil Procedure 12(c) are
subject to the same standard of review as motions to dismiss
under Rule 12(b)(6), see Marrero-Gutierrez v. Molina, 491
F.3d 1, 5 (1st Cir. 2007), the court addresses the claims of
all Defendants under a single analysis.

[2] The court's summary of the facts is drawn principally from
Plaintiffs' Amended Complaint, with all factual allegations
taken as true and all reasonable inferences made in
Plaintiff's favor.  Watterson v. Page, 987 F.2d 1, 3 (1st
Cir. 1993).  The court has also considered records from the
Massachusetts Registry of Deeds appended as exhibits to
Defendants' motion to dismiss.  These documents are public
records, the authenticity of which Plaintiff has not
disputed, and for this reason may be considered without
converting Defendants' Rule (12)(b)(6) motion into one for
summary judgment.  McInnis-Misenor v. Me. Med. Ctr., 319
F.3d 63, 67 (1st Cir. 2003); Watterson, 987 F.2d at 3
(citing cases).

incorporated municipal district in the town of Becket,
Massachusetts.  See generally, 2000 Mass. Acts ch. 351
(2000).  Established in 2001, Becket Woods covers 850 acres
and is divided into approximately 155 voting lots.  The
District is governed by the Becket Woods Prudential
Committee ("the Prudential Committee"), a seven-member board
with power over District revenue collection, capital
expenditures, budgeting, hiring, supervision and
contracting.  Id.

Members of the Prudential Committee are elected
annually and serve staggered three-year terms.  Voting is
conducted on a per-lot basis; all lot owners within the
District may vote and owners of multiple voting lots are
entitled to cast a vote for each lot owned.  In District
elections, absent lot owners are permitted to vote by proxy
by delegating their voting power to other members of the
community.

In 2004, Westland Construction Corporation,
("Westland"), purchased four lots in Becket Woods.
Plaintiff was Westland's president.  On February 13, 2007,
at least one of Westland's District lots was titled to
Plaintiff personally.  Approximately two months later, on
April 12, 2007, the land was deeded back to the corporation.

Plaintiff alleges that between 2006 and 2008,
Defendants' governance of Becket Woods was deficient in a
number of ways.  According to the complaint: in June of
2006, District reserves of tax revenues totaled $60,000 but,
by 2008, these reserves had been entirely depleted; in the
summer of 2006, Defendants unlawfully diverted tax revenues
to purchase and install clay tennis courts; and Defendants
contracted for road work without complying with Mass. Gen.
Laws ch. 30B, the state low-bid law.  The complaint further
alleges that Defendants kept these and other expenditures
from District owners and that Defendants attempted to
obscure its actions by denying Plaintiff access to District
records.

Plaintiff also makes numerous allegations relating to
District voting procedures.  He states that, on August 31,
2008, a "special election" was held on the issue of a new
tax increase within the District.  Plaintiff asserts that
Defendants "rigged" this election by obstructing the
nomination process, by manipulating the proxy voting system,
and by altering proxy card votes.  According to the
complaint, Defendants thwarted Plaintiff's attempts to
organize District opposition to the proposed tax increase by
excluding him from a public meeting of the Prudential
Committee on the day of the vote.  Similarly, Plaintiff

4

alleges that two weeks after the vote, on September 13, 2008, he was excluded by Defendants from the first hour of a meeting of the Prudential Committee which was held at Becket Town Hall.

On September 19, 2008, approximately three weeks after the special election, Plaintiff acquired one of Westland's District lots by quitclaim deed.  Plaintiff has not alleged that he had individually owned a voting lot in the District prior to this date.  Plaintiff filed his complaint in this court on May 18, 2009.

### III. DISCUSSION

A. Standing.

It is the party invoking the jurisdiction of the court that bears the burden of establishing standing.  Sullivan v. City of Augusta, 511 F.3d 16, 29 (1st Cir. 2007) (citing FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 231 (1990). The question of standing involves both constitutional limitations on federal jurisdiction and prudential limitations on its exercise.  "In its constitutional dimension, standing imports justiciability: whether the plaintiff has made out a 'case or controversy' between himself and the defendant within the meaning of Art. III." Warth v. Seldin, 422 U.S. 490, 498 (1975).  In order to establish Article III standing, a plaintiff must have a

"personal stake in the outcome of the controversy." <u>Baker</u>
<u>v. Carr</u>, 369 U.S. 186, 204 (1962).  The "irreducible
constitutional minimum of standing" has three elements: (1)
injury in fact, (2) causation, and (3) redressability.
<u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560-61 (1992).

Even when a case falls within these constitutional
boundaries, "a plaintiff may still lack standing under the
prudential principles by which the judiciary seeks to avoid
deciding questions of broad social import where no
individual rights would be vindicated and to limit access to
the federal courts to those litigants best suited to assert
a particular claim." <u>Gladstone, Realtors v. Bellwood</u>, 441
U.S. 91, 100 (1979).  To demonstrate so-called prudential
standing, a litigant must "show that his claim is premised
on his own legal rights (as opposed to those of a third
party), that his claim is not merely a generalized
grievance, and that it falls within the zone of interests
protected by the law invoked." <u>Pagan v. Calderon</u>, 448 F.3d
16, 27 (1st Cir. 2006).

A complaint that fails to affirmatively demonstrate
standing is subject to dismissal.  <u>New York Civil Service</u>
<u>Comm'n v. Snead</u>, 425 U.S. 457, 458 (1976); <u>McNutt v. Gen.</u>
<u>Motors Acceptance Corp.</u>, 298 U.S. 178, 189 (1936).

6

Here, Defendants contend that because Plaintiff was not a landowner at Becket Woods until September 19, 2008, he lacks standing to bring Claims I-IX of the complaint, all of which relate to District governance prior to that date.  The court agrees.  A survey of Plaintiff's claims makes clear that, by and large, the rights he is seeking to vindicate were not held by him, but by Westland at the time of their alleged violation.  Therefore, to the extent Plaintiff's claims are rooted in Defendants' actions taken before Plaintiff was a landowner at Becket Woods, they are subject to dismissal for lack of standing.

1. <u>Voting Irregularities</u>.

Plaintiff's first category of claims (Counts I-III, VI & VII) asserts that Defendants' administration of election procedures (notably the nomination and proxy voting processes), and their intentional manipulation of the August 31, 2008 special election, violated the Equal Protection Clause of the Fourteenth Amendment by diluting District owners' voting power and failing to comport with the "one person, one vote" principle enunciated in <u>Reynolds v. Sims</u>, 377 U.S. 533 (1964).  Without deciding whether such popular election requirements are applicable in the context of a quasi-private community such as Becket Woods, <u>see</u> <u>Salyer Land Co. v. Tulare Lake Basin Water Storage Dist.</u>, 410 U.S.

719, 730 (1973) (finding such principles inapplicable in a Water Storage District), it is evident that any constitutional injury that may have resulted from Defendants' alleged machinations was cognizable only as injury to persons otherwise entitled to vote, _i.e._ District landowners at the time of the election.   <u>Cf</u>. <u>Holt Civic Club v. Tuscaloosa</u>, 439 U.S. 60, 68 (1978) (refusing to "extend[] the 'one man, one vote' principle to individuals residing beyond the geographic confines of the governmental entity concerned").   Because Plaintiff was not an individually enfranchised member of the Becket Woods Community at the time of the contested elections, he lacks standing to challenge the alleged voting irregularities.

2. <u>First Amendment Claims</u>.

     The fact that Plaintiff did not individually own any voting lot also forecloses his second category of claims, (Counts IV, VI & VII), which alleges that Defendants violated the First and Fourteenth Amendments by excluding him from attending or speaking at District meetings on August 31 and September 13, 2009.   "The Constitution does not grant to members of the public generally a right to be heard by public bodies making decisions of policy." <u>Minnesota State Bd. for Community Colleges v. Knight</u>, 465 U.S. 271, 283 (1984).   To the degree that Plaintiff had the

right to speak at either the August 31 or the September 13,
2009 District meetings, it was in his capacity as
representative of Westland -- a Becket Woods voter and
property owner.  <u>Curnin v. Town of Egremont</u>, 510 F.3d 24
(1st Cir. 2007) (holding that only registered voters are
guaranteed the right to speak at town meetings); <u>Rowe v.
City of Cocoa</u>, 358 F.3d 800, 803 (11th Cir. Fla. 2004) (rule
preventing non-residents and non-taxpayers from speaking in
limited public forum does not violate First and Fourteenth
Amendments); <u>Carlow v. Mruk</u>, 425 F. Supp. 2d 225, 244
(D.R.I. 2006) (same).  Any constitutional injury which may
have been suffered as a result of Defendant's actions was to
the rights of Westland, not Plaintiff.

3. <u>Fraud Related Claims</u>.

        Finally, Plaintiff's fraud, embezzlement, and
racketeering claims (Counts V, VIII, and IX) seek to recover
losses suffered by District landowners prior to the time
that Plaintiff joined their cohort.  As Plaintiff's lengthy
and detailed allegations make abundantly clear, the emptying
of the District's coffers, the destruction of the value of
District land, and the injury to Plaintiff's business are
all occurred before, in many cases well before, September of
2008.

Conceding that Westland, not he, was the legal property owner prior to September 19, 2008, Plaintiff nevertheless contends that standing may lie with him because "[a]s a corporate officer" of Westland, it was Plaintiff who observed, investigated, and ultimately uncovered Defendants alleged illegalities.  (Dkt. No. 33, Pl. Opp'n. To Defs.' Mot. To Dismiss, 9).  This contention lacks merit.

The law in this circuit is clear that where a harm has been directed toward a corporation, only the corporation has standing to seek a remedy for that harm.  A shareholder, even a sole shareholder, does not have standing to sue to redress wrongs inflicted on a corporation in which he holds an interest absent a showing that he individually suffered some particularized, non-derivative injuries.  See Pagan, 448 F.3d at 28 (shareholders lack standing); Diva's Inc. v. City of Bangor, 411 F.3d 30, 42 (1st Cir. 2005) (sole shareholder of corporation suing under 42 U.S.C. § 1983 lacks standing).  To be sure, Plaintiff has claimed (as shareholder-plaintiffs often can) that any diminution of the value of Westland's holdings in Becket Woods will be felt by him as president of the corporation.  However, assuming arguendo that this may represent an "injury in fact" for Article III purposes, Franchise Tax Bd. of Cal. v. Alcan Aluminium, Ltd., 493 U.S. 331, 335-36 (1990), such

derivative injury is insufficient to overcome prudential
limitations on individual standing.  Pignato v. Dein Host,
Inc., 835 F.2d 402, 406 (1st Cir. 1987)(quoting Brictson v.
Woodrough, 164 F.2d 107, 109 (8th Cir. 1947)) (shareholder
standing rule adheres "even though the injury to the
corporation may incidentally result in the depreciation or
destruction of the value of the stock."); Warren v. Mfrs.
Nat'l Bank of Detroit, 759 F.2d 542, 544 (6th Cir.1985)
("dimunition in value of the corporate assets is
insufficient direct harm to give the shareholder standing to
sue in his own right").  In short, notwithstanding
Plaintiff's current attempts to conflate their identities,
he and Westland are separate; Plaintiff's right to seek
direct legal redress for injuries suffered by Westland was
relinquished by his decision to title his property at Becket
Woods to the corporation.  See Kush v. American States Ins.
Co., 853 F.2d 1380, 1384 (7th Cir. 1988) (corporate form
confers many advantages, in return for which the shareholder
relinquishes several prerogatives, "including that of direct
legal action to redress an injury to him as primary
stockholder in the business").

In sum, because Counts I-IX of the complaint fail to
allege any particularized, non-derivative injuries

11

individually suffered by Plaintiff, they must be dismissed
for lack of standing.

B. Failure to State a Claim.

        Count X of the complaint alleges that certain
restrictive architectural covenants placed on all properties
in Becket Woods violate Plaintiff's "property rights" under
the Due Process clause of the Fourteenth Amendment.
Plaintiff alleges that these covenants were illegally
created by the Becket Woods Community Association ("the
B.W.C.A.") -- the predecessor to the Becket Woods Road and
Maintenance District -- and requests that the court "ban the
B.W.C.A., its powers and jurisdictions in the District,
including its architectural covenants."  (Dkt. No. 5 Am.
Compl. ¶ 102.)

        Defendants have moved to dismiss Count X on the ground
that the B.W.C.A. is not named in the complaint.  In his
opposition to Defendants' motion, Plaintiff offers to amend
the complaint to add the B.W.C.A. as a party.  The court
finds, however, that Plaintiff's proposed amendment would be
futile.  Without detailing each and every legal deficiency
in Plaintiff's argument, the court finds that even if the
B.W.C.A. were added, the vague allegations contained in
Count X simply do not amount to a colorable violation under
any theory of due process.

IV.   <u>CONCLUSION</u>

For the foregoing reasons, Defendants' Motion to Dismiss (Dkt. No. 27) is hereby ALLOWED.  This case may now be closed.

It is So Ordered.

<u>/s/ Michael A. Ponsor</u>
MICHAEL A. PONSOR
U. S. District Judge